IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ROSE MARY MUNIZ,                        )
                                        )
      Plaintiff,                      )
                                        )
v.                                      )          Case No. CIV-22-610-P
                                        )
KILOLO KIJAKAZI,                        )
  Acting Commissioner of the            )
  Social Security Administration,       )
                                        )
      Defendant.                      )

## <u>ORDER</u>

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant denying her application for supplemental security income ("SSI") benefits under Titles XVI of the Social Security Act, 42 U.S.C. § 1352. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I. <u>Administrative History and Final Agency Decision</u>

Plaintiff initially filed an application for SSI on May 24, 2017, alleging disability since August 1, 2016. AR 64. On May 31, 2019, an Administrative Law Judge ("ALJ") found Plaintiff had not been under a disability from the application date through the date of the decision. AR 72. The Appeals Council denied Plaintiff's request for review, AR 78-80, and therefore the ALJ's decision was the final decision

1

of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009). Plaintiff did not pursue a further appeal.

Plaintiff filed a second application for SSI on June 22, 2020, alleging disability since December 31, 2016. AR 10. The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. *Id.*

Plaintiff, appearing with counsel, and a vocational expert ("VE") testified at a telephonic administrative hearing conducted before an ALJ on September 20, 2021. AR 31-60. On September 28, 2021, the ALJ issued a decision in which he found Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the application date through the date of the decision. AR 7-20.

Following the agency's sequential evaluation procedure, the ALJ found at the first step that Plaintiff had not engaged in substantial gainful activity since June 22, 2020, the application date. AR 12. At the second step, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease/spinal stenosis and sacroiliitis/sacroiliac joint dysfunction/greater trochanteric bursitis." *Id.* At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. AR 14.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work due to multiple manipulative

and postural limitations, including a sit/stand option. AR 15. The ALJ presented the RFC limitations to the VE to determine whether there were jobs in the national economy Plaintiff could perform. AR 56-58. Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. *Id.* The ALJ ultimately adopted the VE's testimony and concluded, at step five, that Plaintiff was not disabled based on her ability to perform the identified jobs. AR 19-20.

## II.   Issues Raised

While Plaintiff's arguments are repetitive and difficult to discern, on appeal, she essentially raises five points of error. First, Plaintiff asserts the ALJ reopened her 2017 claim for consideration, though she does not appear to seek a reversal of that decision. Doc. No. 17 ("Op. Br.") at 5-7. Second, Plaintiff contends the ALJ erred in his evaluation of the state agency physicians' medical opinions. *Id.* at 7-8. Third, Plaintiff contends the ALJ's RFC is not supported by substantial evidence and that he erred in his consideration of her subjective reports of pain. *Id.* at 8-14. Fourth, she argues the ALJ failed to properly consider her mental impairments. *Id.* at 10-11. Finally, Plaintiff asserts the ALJ erred at step five based on the errors raised above. *Id.* at 15.

III.   General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.   <u>Previous Application and Decision</u>

In her first argument on appeal, Plaintiff asserts that by relying on medical records pertinent to her 2017 application, the ALJ reopened the same. In so arguing, Plaintiff relies upon *Taylor for Peck v. Heckler*, 738 F.2d 1112 (10th Cir. 1984), which concerned whether an ALJ, in rendering his decision, had reopened the plaintiff's prior application for social security survivor benefits. Therein, the plaintiff filed an application for surviving children's insurance benefits in May 1977, alleging Peck, the decedent, was the father of her two minor children. *Id.* at 1113. The application was denied initially and on reconsideration for lack of proof of paternity. *Id.* at 1113-14. The plaintiff did not seek further review. *Id.* at 1114.

In October 1980, the plaintiff filed a second application accompanied by new supporting evidence, and the SSA denied it as a duplicate claim. *Id.* The plaintiff requested a hearing before an ALJ. *Id.* The ALJ held a full-scale hearing and issued a decision on the merits of the plaintiff's claim, reviewing the applicable law and evidence, making specific findings of fact, and deciding the children were not eligible for survivor benefits. *Id.* The Appeals Council denied the plaintiff's request for review. *Id.*

The plaintiff filed an appeal with the federal district court, which affirmed on the basis of administrative res judicata, finding the 1980 claim was duplicative of that in 1977. *Id.* The court concluded that the adverse ruling on the 1977 claim barred

the plaintiff from relitigating it. *Id.* The plaintiff appealed to the Tenth Circuit, which reversed the district court's decision. *Id.* at 1114-15. The court noted that the ALJ had not disposed of the second claim on the basis of res judicata. *Id.* The court held that the ALJ, by conducting the first evidentiary hearing in the case and considering the merits of the 1980 claim, which was the same as the 1977 claim, had *de facto* reopened the initial claim. *Id.* at 1115. "'[B]y reviewing the case on its merits and considering the additional evidence submitted in support of the plaintiff's claim, the ALJ in effect permitted a reopening of the prior proceedings.'" *Id.* (quoting *Brown v. Heckler*, 565 F. Supp. 72, 74 (E.D. Wis. 1983)). Accordingly, the Tenth Circuit found the district court erred in denying judicial review of the defendant's decision on the basis of res judicata and should have considered it on its merits, i.e., whether the findings of the ALJ were supported by substantial evidence. *Taylor*, 738 F.2d at 1115.

Here, in a confusing argument, Plaintiff relies on *Taylor* to argue that the ALJ reopened Plaintiff's prior application for SSI benefits because he relied on records submitted in support of her prior application. However, she does not explicitly urge the Court to consider and review the prior claim. Instead, after discussing *Taylor*, she states, "[The ALJ's] decision regarding Claimant's progressive conditions cannot be supported by the requisite substantial evidence given that he did not explain why Claimant's updated RFC is actually less restrictive than Claimant's

2019 RFC despite new evidence demonstrating further degeneration of her progressive lumbar disease, sacroiliac dysfunction, and mental health impairments." Op. Br. at 6-7. While unclear, the Court construes this statement as an argument that the current ALJ was bound by the 2019 decision and/or that he was required to explain any deviation from the previous RFC that was not in Plaintiff's favor.

In any event, the Court does not have to discern Plaintiff's precise argument because it is clear from the current ALJ's decision that he did not "reopen" Plaintiff's 2017 application. Plaintiff's contention that he did so is based solely upon the fact that the ALJ, in rendering the current decision, relied on records submitted to support Plaintiff's 2017 application.

The Tenth Circuit has held that medical records relevant to a plaintiff's disability claim but dating from an earlier, adjudicated period remain relevant to a plaintiff's complete medical history and should be considered by the ALJ. *Noonen v. Saul*, No. CIV-20-657-STE, 2021 WL 2693399, at *2 (W.D. Okla. June 30, 2021) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)). The Tenth Circuit has soundly rejected, however, Plaintiff's argument that the mere consideration of medical records from a prior adjudicated period, without more, reopens a previous application.

> The ALJ did not mention the prior application [] or suggest in his decision that he was reconsidering that application on the merits. Mr. Carson argues that the ALJ nonetheless effected a *de facto* reopening by considering medical evidence that Mr. Carson presented from the

period covered by the prior application. We have previously rejected the argument that "an examination of medical evidence from earlier adjudicated periods somehow reopens [the previously rejected claim]," *Hamlin*, 365 F.3d at 1215 n.8, and we do so again here. *See also Burks–Marshall v. Shalala*, 7 F.3d 1346, 1348 (8th Cir. 1993) (noting that ALJ did not even mention previous application in his decision and holding that "the mere allowance of evidence from the earlier applications, without more, cannot be considered a reopening of the earlier case") (cited with approval in *Hamlin*).

*Carson v. Barnhart*, 140 F. App'x 29, 40 (10th Cir. 2005).

In the present case, the ALJ never mentioned Plaintiff's 2017 application in his decision, much less indicate that he was considering the same. Thus, Plaintiff's assertion of error relying on *Taylor* is denied.

V. <u>The RFC & Plaintiff's Subjective Complaints</u>

Next, Plaintiff contends the ALJ's RFC is not supported by substantial evidence, primarily because he failed to properly consider her subjective complaints. The ALJ determined Plaintiff could perform light work, though at less than a full range due to, *inter alia*, a sit/stand option requirement. AR 15. Plaintiff explains that the previous ALJ found she was only capable of sedentary work and that the current ALJ did not explain how she was now capable of light work even though, according to Plaintiff, her physical conditions have deteriorated since her previous SSI denial. Op. Br. at 6-7. This difference is significant because as Plaintiff notes, the VE testified that if Plaintiff were limited to sedentary work and the sit/stand option requirement applied, competitive jobs would not be available. AR 58.

Plaintiff does not cite any law indicating that the ALJ is bound by a previous ALJ's RFC determination on a prior application. The only question before this Court is whether the ALJ's determination that Plaintiff was capable of performing light, as opposed to sedentary, work is supported by substantial evidence. *Wall, supra.* It is well established that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7. In the present case, the undersigned finds the ALJ's RFC determination is supported by a proper narrative statement, as well as substantial evidence.

The ALJ began by thoroughly discussing Plaintiff's reports of pain and various limitations. AR 13-14, 16, 18-19. Further, with regard to the objective medical evidence, the ALJ discussed Plaintiff's medical records prior to the date of her SSI application. Specifically, the ALJ noted that medical imaging revealed degenerative changes in Plaintiff's back dating back to August 2016 and January 2018. AR 16 (citing AR 597, 598-600, 658-59, 728, 746-52). He further explained that through March 2020, although medical examinations often revealed tenderness to her hips and lumbar spine, as well as some minimally reduced range of motion, Plaintiff generally had normal strength and sensation throughout, non-antalgic gait, and an ability to tiptoe and heel walk without difficulty. AR 16-17.

Moving to medical records dated nearer and/or subsequent to Plaintiff's application date, the ALJ discussed a June 2020 appointment in which Plaintiff presented with intermittent heel pain and while there was some tenderness noted in her heel, the remainder of the physical examination was normal. AR 17-18 (citing AR 524-27). Examinations in August and October 2020 were also relatively normal. AR 18 (citing 344-49, 520-22). In December 2020, Plaintiff presented with complaints of left shoulder pain. AR 18 (citing AR 150-55). Although examination revealed tightness, tenderness, and spasm in her shoulder, the examination was otherwise normal. She received conservative treatment of a muscle relaxer prescription and ibuprofen. *Id.*

Similarly, in March 2021, she presented with left side lower back and hip pain. AR 18 (citing 762-65). She had tenderness in both areas but "no spinal process with normal straight leg raise testing, normal strength throughout, normal sensation and normal gait." *Id.* Imaging performed at that time indicated multilevel degenerative changes with facet hypertrophy, but no acute osseus abnormality. *Id.* She again received conservative treatment of prescriptions for Naprosyn and Robaxin. *Id.* An MRI performed the following month confirmed multilevel degenerative changes of the lumbar spine and sacroiliac joints that were described as "only moderate for her age." AR 18 (citing 766-68).

The ALJ also discussed Plaintiff's daily activities in determining the RFC. AR 16. He noted Plaintiff was able to take care of herself, her teenage children, and her pets, as well as perform household chores, albeit occasionally at a slower pace, shop, drive, prepare meals, go out to eat, and go to the casino "maybe twice a month." *Id.*

Thus, in determining the RFC, the ALJ discussed Plaintiff's subjective reports of pain, the objective medical evidence, and her daily activities. He also noted that Plaintiff's medical records revealed that her treatment was generally conservative. The ALJ properly considered all the relevant evidence related to Plaintiff's subjective complaints and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.").

Nevertheless, Plaintiff complains that "the ALJ failed to explain why Claimant was now capable of carrying more weight [than that found in the previous decision] when the medical records demonstrate Claimant is limited to sedentary activity given an actual diagnosis of physical deconditioning and several degenerative pain-producing impairments." Op. Br. at 7 (citing AR 752, 754). There are several issues in Plaintiff's lengthy statement the Court must address.

First, as previously explained herein, the ALJ was not bound by the previous decision. Second, contrary to Plaintiff's assertion, the medical record does not contain any statement from a medical provider limiting Plaintiff to sedentary activity. Instead, the record to which Plaintiff cites includes an update to her social history and notes, *inter alia*, that Plaintiff reported her activity level as sedentary. AR 754. Finally, it is well established that "an actual diagnosis" is never sufficient, standing alone, to warrant a finding of disability. "[T]he existence of an impairment, alone, is insufficient to establish that one is disabled. Rather, the impairment must result in the inability to do . . . any [ ] substantial gainful activity. 20 C.F.R. [Section] 416.905(a)." *Chacko v. Berryhill*, No. CIV-18-455-HE, 2018 WL 8899304, at *3 (W.D. Okla. Dec. 18, 2018) (quoting *Hood v. Chater*, No. 95-1047, 1995 WL 643161, at *2 (10th Cir. Nov. 2, 1995)).

Plaintiff fails to point to any evidence other than her own assertions to support the necessity of additional limitations. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *see also Hamilton v. Sec'y of Health & Hum. Serv*s., 961 F.2d 1495, 1499 (10th Cir. 1992) ("[A plaintiff's] testimony alone cannot establish a nonexertional impairment"). The longitudinal evidence in the record does not reflect further limitations, the record does not contain a medical source opinion that identifies limitations greater than those included in the RFC assessment, and the ALJ

thoroughly considered the evidence of record. Accordingly, the Court declines Plaintiff's invitation to reweigh the evidence.

VI. Medical Opinions

Plaintiff asserts the ALJ failed to properly assess the state agency physician opinions, which found Plaintiff was capable of performing the full range of light work. 20 C.F.R. § 416.920c(b) requires the ALJ to articulate how persuasive he finds the medical opinions in the record and/or prior administrative medical findings. Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. Section 416.920c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion or prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2) & (c)(3)-(5). Generally, the ALJ is not required to explain how other factors beyond supportability and consistency were considered. 20 C.F.R. § 416.920c(b)(2).

Plaintiff contends the ALJ failed to consider supportability of the state physician opinions, instead limiting his analysis to consistency. Op. Br. at 7-8. This is inaccurate. As illustrated below, the ALJ clearly discussed both supportability and consistency in his consideration of these opinions, including discussing records that both supported and did not support the agency physicians' opinions. AR 18-19.

> State Agency medical consultants opined the claimant was limited to the full range of light work. [(AR 86-93, 94-109)] While these

assessments are generally consistent evidence available for review, including, as noted above, several records documenting mild to benign abnormalities (records documenting normal strength, sensation and gait) despite the claimant's significant allegations, I find the longitudinal record of evidence supportive of further limitations. Indeed, while she testified that she would be able to bend over and pick items up, be able to pick coins off a table and could reach and extend her arms, some records have denoted the claimant to have decreased range of motion, spasms, positive straight leg raise testing, etc. Further, she testified she was recommended to have an MRI of her neck regarding her shoulder pain and numbness/tingling, but had not had a chance to have it done. Accordingly, in deference to the claimant's statements, as well as some abnormalities in the record, I further limited her posturally and manipulatively. Further, while most exams have denoted normal strength, sensation and gait, the most recent record denoted the claimant had some pain with ambulation and antalgic gait. Accordingly, in deference to the claimant, I further limited her to a sit stand option. However, considering otherwise noted normal findings on exam, and her ability to engage in nearly all her daily activities of living, including shopping, going out to eat, going to the casino approximately twice a month, etc., I find the residual functional capacity herein adequately addresses her impairments as reasonably supported by the evidence of record. Thus, I found these opinions partially persuasive.

AR 18-19.

Additionally, Plaintiff asserts the ALJ "links his consistency determination to a speculative inference that Claimant is capable of a light RFC because Claimant states she could 'pick a coin' off the table." Op. Br. at 9. However, as illustrated above, the ALJ's determination was not so limited. Finally, to the extent Plaintiff complains the state agency physicians did not review later medical records, the ALJ clearly considered the same and such records provided the primary bases for the additional RFC limitations. AR 18-19.

In considering the state agency physician opinions, the ALJ discussed both supportability and consistency, as required by 20 C.F.R. § 416.920c.[1] Moreover, the ALJ's overall rationale was "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Accordingly, this claim of error is denied.

VII. <u>Mental Impairments</u>

Plaintiff contends the ALJ erred by concluding at step two that her mental impairments were not severe. Op. Br. at 10-11. The regulations require an ALJ to consider at step two "the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. The Tenth Circuit has held, however, that the failure to identify an impairment as severe at step two is harmless error if the ALJ proceeds to the next step in the sequential evaluation. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Accordingly, had Plaintiff's mental impairments met the requirements for a severe impairment at step two, because the

---

[1] Notably, an ALJ may assign a greater limitation than a medical opinion opines. *Terwilliger v. Comm'r, Soc. Sec'y Admin.*, 801 F. App'x 614, 628 n.9 (10th Cir. 2020) ("'[W]e are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably' to the claimant." (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit")).

ALJ found Plaintiff had at least one severe impairment and then proceeded to step three, the error is harmless.

Plaintiff also argues the ALJ failed to consider the effects of her non-severe mental impairments in determining the RFC. The regulations require an ALJ to consider all medically determinable impairments, including impairments that are not severe, in assessing residual functional capacity. 20 C.F.R. § 416.945(a)(2). The SSA requires this analysis because "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments— be critical to the outcome of a claim." SSR 96–8p, 1996 WL 374184, at *5. Consequently, when an ALJ finds non-severe mental impairments at step two, the ALJ must still consider mental impairments when assessing the RFC. *Id.*

Here, the ALJ found Plaintiff's depression, anxiety, and bipolar disorder were non-severe impairments. AR 12-14. To reach this finding, the ALJ considered four broad functional areas of mental functioning found in the disability regulations used to evaluate mental disorders. 20 C.F.R. § 416.920a(c)(3). If the ALJ finds a plaintiff's mental impairment results in no more than mild limitations in each of these areas, the ALJ generally concludes the impairment is not severe. 20 C.F.R. Section 416.920a(d)(1).

In this case, the ALJ determined at step two that Plaintiff had mild limitations in each of the four categories. AR 13-14. In so finding, the ALJ discussed Plaintiff's subjective reports to which she testified in her administrative hearing, and those she reported to the SSA and her health care providers. *Id.* He also reviewed the objective medical evidence. *Id.*

Plaintiff's assertion that the ALJ did not consider the effects of her mental impairments in determining her RFC is simply inaccurate. In addition to the thorough analysis within step two, at step four, the ALJ explained,

> State Agency psychological consultants at the initial and reconsideration level opined the claimant's mental impairments were not severe. [(AR 86-93, 94-109)] Following a comprehensive review of all the evidence, I find these assessments to be consistent with the claimant's long history of conservative treatment with medication and therapy, as well as minimal adjustment or titration. Further, this assessment is supported by several records throughout denoting normal psychiatric findings on exam. Finally, I also find these opinions to be consistent with the claimant's own reported ability to engage in nearly all her activities of daily living.

AR 19.

Thus, the ALJ discussed and considered Plaintiff's non-severe mental impairments in determining the RFC and concluded Plaintiff had no functional limitations resulting from the same. The ALJ was not required to impose any limitations in the RFC unless the record bore out those limitations.[2] Plaintiff has not

---

[2] Indeed, SSR 96–8p, 1996 WL 374184, specifically cautions against any requirement that

cited any evidence the ALJ failed to consider. Accordingly, this assertion of error does not warrant remand.

## VIII. Step Five

In Plaintiff's remaining argument, she contends the ALJ erred at step five of the sequential process. Op. Br. at 15. This assertion is based upon Plaintiff's contention that the ALJ could not have performed the proper step five analysis due to the alleged errors in the previous steps. However, the Court has already affirmed the ALJ's analyses and determinations in the previous steps. Accordingly, this assertion of error is denied.

## IX.   Conclusion

Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this   11th   day of August, 2023.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

mental limitations found at step two equate to a corresponding RFC limitation. *Id.* at *4 ("The adjudicator must remember that the limitations identified in the [four functional areas] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").